UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONY BERRY,

        Petitioner,

                                      CASE NO. 2:07-CV-14222
v.                                   HONORABLE ARTHUR J. TARNOW

CARMEN PALMER,

        Respondent.
_____/

**OPINION AND ORDER DENYING THE PETITION FOR A WRIT
OF HABEAS CORPUS, BUT GRANTING IN PART AND
DENYING IN PART A CERTIFICATE OF APPEALABILITY**

I.     Introduction

      Michigan prisoner Tony Berry ("Petitioner") has filed a *pro se* petition for writ of habeas

corpus pursuant to 28 U.S.C. § 2254 asserting that he is being held in violation of his

constitutional rights. Petitioner was convicted of first-degree criminal sexual conduct and first-

degree home invasion following a jury trial in the Montmorency County Circuit Court. He was

sentenced as a fourth habitual offender to consecutive terms of 35 to 60 years imprisonment and

20 to 40 years imprisonment on those convictions in 2003. In his pleadings, Petitioner raises

claims concerning the admission of other acts evidence, the right to present a defense, the use of

jury questions, a request for DNA testing, the sufficiency of the evidence, the jury instruction on

flight, the legality of his arrest, the denial of counsel, the effectiveness of trial and appellate

counsel, and actual innocence. For the reasons stated herein, the Court denies the petition for a

writ of habeas corpus,.but grants in part and denies in part a certificate of appealability.

II.    Facts

Petitioner's convictions arise from the home invasion and sexual assault of a 90-year-old

woman at her residence in Atlanta, Michigan on September 19, 2001.  The Michigan Court of

Appeals set forth the relevant facts, which are presumed correct on habeas review, *see Monroe v.*

*Smith*, 197 F. Supp. 2d 753, 758 (E.D. Mich. 2001), *aff'd.* 41 Fed. Appx. 730 (6th Cir. 2002), as

follows:

> On September 19, 2001, defendant allegedly broke into the ninety-year-old
> victim's home in Atlanta, Michigan, and sexually assaulted her. The victim FN1
> testified that she was in bed when she noticed a light outside her window. As she
> went toward the door, two men came inside. One perpetrator pushed the victim
> back onto the bed and sat beside her. The same perpetrator put his hand on her
> leg, and the victim pushed it away. As the two men were leaving, one man
> threatened to return "and get her" if she reported the incident to the police, or if
> he saw a police car "in [her] yard." After the men left, the victim discovered that
> her purse had been moved, and all of her fifteen one-dollar bills were missing.
>
> FN1. The trial court admitted the victim's preliminary examination testimony at
> trial because the victim was unavailable to testify due to health reasons.
>
> Later that night, one of the men forced the chain off the victim's door and came
> back inside with a flashlight. When the victim confronted the perpetrator about
> her missing money, he initially denied taking it, but thereafter went outside and
> returned with some money. The perpetrator sat on the bed beside the victim,
> asked for some paper towel, went into the kitchen to retrieve the paper towel,
> handed the money to the victim, and directed her to use the paper towel to wipe
> off any fingerprints. After the victim wiped the money, the perpetrator retained
> the paper towel. The victim got up and turned on a lamp, but the perpetrator
> immediately turned it off and pushed the victim back onto the bed. Thereafter, the
> perpetrator removed the victim's pajama bottoms, exposed his penis, and was "all
> over" the victim. The victim pushed the perpetrator "as hard as [she] could,"
> noting that he was lying directly on her pacemaker. The perpetrator, who was
> wearing hard rubber gloves, put his hand over the victim's face and mouth. When
> the victim refused to put her hand on the perpetrator's penis, as directed, he used
> his hand and forced her to touch his penis, which never became erect. The

perpetrator forced the victim's legs apart, "put his face right down on [the victim's vagina]," and touched her vagina with his tongue. The victim indicated that she unsuccessfully attempted to fight him off. After the assault, the perpetrator asked the victim if she "got any thrill or any good feeling out of this at all?" Before leaving, the perpetrator made the victim promise not to report the incident, and threatened to return if she told anyone or if he saw the police in her yard.

On September 20, the victim's friend took the victim away from her home and they reported the incident to the police. The victim described the perpetrator as "quite a broad man" with broad feet. The perpetrator was barefoot, wore a wet, cold rubber cap and rubber gloves, and had a "very bad" smell of "some kind of booze." The victim indicated that she could hardly see the perpetrator. A doctor who treated the victim on September 21 testified that she had bruising on her nose and chin, but no trauma to the vaginal area.

While leaving the victim's residence on the evening of September 21, officers observed a pickup truck parked at a cabin "right next to" the victim's residence. On September 22, the police returned and noticed bare footprints in the sand outside the victim's residence that led to the rear door of the cabin. A pickup truck registered to defendant was parked at the cabin.

The owner of the cabin, who was at the cabin the weekend before the incident, testified that defendant had been staying in a tent in the woods. During that weekend, however, the owner invited defendant to stay inside the cabin because it was raining and defendant's truck was not working. The owner allowed defendant to remain inside the cabin after the owner left for the week. The owner indicated that defendant was drinking a lot of vodka inside and outside the cabin. The owner also indicated that defendant had asked "a lot of general questions" about the victim. Included in defendant's inquiries were questions regarding the victim's age and whether she had many visitors.

During a search of the cabin the police confiscated a dollar bill and paper towels wadded up in a trash container, vodka bottles in a barrel outside the cabin, and gloves with rubber tips and a flashlight from the cabin floor. Two hairs were retrieved from one of the rubber gloves. DNA testing on the two hairs revealed that they matched a hair sample taken from the victim.

The police also collected blankets, bedding, and pajama bottoms from the victim's bedroom, as well as hairs from the bed. A hair found on the victim's bed did not match the victim or defendant, and no further DNA testing was performed on the

hair. Defendant was also excluded as a contributor of stains found on the victim's pajama bottoms and bedding.[1] A forensic scientist testified that blue denim jeans could have caused certain fabric impressions on the victim's bedding.

Mark Boughner testified that he drove defendant to the cabin during the afternoon of September 19. Defendant was wearing blue jeans, and had been drinking "some kind of liquor." Boughner next saw defendant on September 20 at Tressia Hensley's residence. Defendant remarked that he was at Hensley's house because "a couple of guys had come to the cabin causing problems and that he shot one of them in the knees." Hensley corroborated Boughner's testimony in that regard, and added that she and defendant drank vodka while at her house. FN2 On the morning of September 21, Boughner drove defendant back to the cabin to get his belongings, and then drove him to a campsite. He noted that defendant's truck was not operable at the time.

FN2. After defendant left Hensley's house on September 20, she had no further contact with him until after he was jailed in March 2002. At that time, Hensley received correspondence from defendant, which she perceived as a threat directing her to "change [her] story." The letter was admitted into evidence.

Defendant's girlfriend, Susan Piper, testified that defendant phoned their Dearborn Heights home on September 21 from a campsite and asked her to come to the campsite. Piper drove to the campsite the following day and spent the night with defendant. The next morning, defendant loaded his belongings in Piper's truck but stated that he was not leaving with her. Defendant gave Piper a gun case that she believed contained a gun, bullets, and the key to the cabin. Piper was thereafter unaware of defendant's whereabouts. About one month later, Piper received a call from a worker at a blood donor center, which led her to believe that defendant was in Pennsylvania. Defendant subsequently called Piper from Pennsylvania, requesting that she forward his Social Security Income ("SSI") check. She later sent two additional SSI checks to Florida. Piper subsequently discovered that defendant was using an alias, which was the name of her deceased former boyfriend. According to Piper, defendant was aware that her former boyfriend's personnel effects, e.g., his birth certificate, were kept at Piper's residence. She also indicated that defendant drank a lot of vodka but that he did not walk around barefoot. When defendant returned to Michigan in March 2002, Piper visited him at a hotel and unsuccessfully attempted to convince him to turn

---

[1]Testing indicated that the deposits were from a female.

himself in.

In March 2002 the FBI and a Dearborn police fugitive team arrested defendant, who was still using an alias, in Detroit. Defendant admitted during an interview that he had used an alias and stayed in motels in Florida and Pennsylvania. Although defendant claimed that he used an alias because of a pending gun charge, the police subsequently discovered that the claim was untrue. Defendant acknowledged that he was staying in the cabin next to the victim's residence on September 19, but denied ever being inside the victim's residence or having any involvement in the charged crimes. Defendant claimed that he was with Boughner on the night of September 19.

A former St. Clair Shores detective testified that he investigated a 1978 breaking and entering of a residence that occurred after midnight and involved the sexual assault of a ninety-six-year-old woman in her bedroom. The perpetrator broke open the door, removed his shoes, put his hand over the woman's mouth, removed the woman's nightgown, opened her legs, and attempted vaginal penetration.FN3 Following the incident, the officer spoke to defendant. Defendant admitted his involvement in the sexual assault and admitted drinking vodka. The officer indicated that defendant lived a few houses away from the woman's house, on the same side of the street.

FN3. Defendant was unable to have vaginal intercourse with the woman.

*People v. Berry*, No. 249430, 2005 WL 354583, *1-3 (Mich. Ct. App. Feb. 15, 2005)

(unpublished).

III.     Procedural History

Following his convictions and sentencing, Petitioner filed an appeal as of right with the

Michigan Court of Appeals raising claims concerning the admission of other acts evidence, the

right to present a defense, the use of jury questions, a request for DNA testing, and ineffective

assistance of trial counsel.  The Michigan Court of Appeals affirmed his convictions.  *People v.*

*Berry*, No. 249430, 2005 WL 354583 (Mich. Ct. App. Feb. 15, 2005) (unpublished).  Petitioner

filed an application for leave to appeal with the Michigan Supreme Court, which was denied.
*People v. Berry*, 474 Mich. 900, 705 N.W.2d 116 (2005).

In 2006, Petitioner filed an initial habeas petition in federal court, which was dismissed upon his own motion that same year. Petitioner then filed a motion for relief from judgment in the state trial court raising claims concerning the sufficiency of the evidence, the jury instructions, the validity of his arrest, and the effectiveness of trial and appellate counsel. The trial court denied the motion finding that the claims lacked merit. Petitioner filed an application for leave to appeal which was denied for lack of merit. *People v. Berry*, No. 275488 (Mich. Ct. App. May 24, 2007) (unpublished). Petitioner filed an application for leave to appeal with the Michigan Supreme Court, which was denied because he "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Berry*, 480 Mich. 891, 738 N.W.2d 713 (2007).

Petitioner thereafter instituted the present habeas action, raising the following claims as grounds for relief:

I.      The trial court violated his due process rights by admitting unfairly prejudicial evidence of a prior criminal sexual conduct incident.

II.     The trial court violated his due process right to present a defense by excluding evidence of third-party guilt.

III.    The trial court violated his due process right to trial by an impartial jury by allowing jurors to submit questions for witnesses during the trial.

IV.     Due process requires post-conviction DNA testing of a foreign hair collected from the victim's bed after the incidence.

V.      He was denied due process where the evidence was insufficient but the conviction was obtained as a result of constitutionally infirm and inadmissible evidence, denial of confrontation and cross-examination, and insufficient jury instructions.

VI.     His convictions must be reversed where his state and federal constitutional rights to be free from unreasonable seizure were violated and his resulting statements should have been suppressed, where his warrantless arrest was not supported by probable cause.

VII.    He was denied his constitutional rights to due process, equal protection, and effective assistance of counsel where state officials placed defense counsel in circumstances in which competent counsel very likely could not render assistance and completely denied him the presence of counsel at critical stages, thereby depriving him of a fair trial.

VIII.   He was denied his constitutional rights to due process, equal protection, and effective assistance of counsel where defense counsel failed to investigate, file motions, or prepare for trial and entirely failed to subject the prosecution's case to meaningful adversarial testing, which rendered the outcome of his trial unreliable.

IX.     He was denied his constitutional rights to due process, equal protection, and appeal of right where he received ineffective assistance of appellate counsel and interference by officials made his compliance impractical, which constitutes cause for procedurally defaulted claims.

X.      He is being unconstitutional restrained of his liberty where he is actually innocent.

Respondent has filed an answer to the petition contending that it should be denied because the claims lack merit and/or are barred by procedural default.

IV.     Discussion

    A.      Standard of Review

Federal law imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody
pursuant to the judgment of a State court shall not be granted with respect to any
claim that was adjudicated on the merits in State court proceedings unless the
adjudication of the claim –

(1)     resulted in a decision that was contrary to, or involved an
        unreasonable application of, clearly established Federal law, as
        determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable
        determination of the facts in light of the evidence presented in the
        State court proceedings.

28 U.S.C. § 2254(d).  Additionally, this Court must presume the correctness of state court factual

determinations.  28 U.S.C. § 2254(e)(1).

    B.      Admission of Other Acts Evidence Claim

    Petitioner first asserts that he is entitled to habeas relief because the trial court erred in

admitting evidence of a prior criminal sexual conduct incident.  Respondent contends that this

claim is not cognizable and lacks merit.

    Alleged trial court errors in the application of state evidentiary law are generally not

cognizable as grounds for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68

(1991); *Serra v. Michigan Dept. of Corrections*, 4 F.3d 1348, 1354 (6th Cir. 1993).  Only when

an evidentiary ruling is "so egregious that it results in a denial of fundamental fairness," may it

violate due process and warrant habeas relief.  *See Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.

2003); *Clemmons v. Sowders*, 34 F.3d 352, 356 (6th Cir. 1994).

    As to the admission of prior acts, the United States Supreme Court has declined to hold

that similar "other acts" evidence is so extremely unfair that its admission violates fundamental

conceptions of justice. *See Dowling v. United States*, 493 U.S. 342, 352-53 (1990).[2] Thus,

"[t]here is no clearly established Supreme Court precedent which holds that a state violates due

process by permitting propensity evidence in the form of other bad acts evidence." *Bugh*, 329

F.3d 496, 512 (6th Cir. 2003). Consequently, there is no Supreme Court precedent that the state

court decisions could be deemed "contrary to" under 28 U.S.C. § 2254(d)(1). *Id.* at 513; *see also*

*Adams v. Smith*, 280 F. Supp. 2d 704, 716 (E.D. Mich. 2003). Moreover, Petitioner's claim that

the state trial court violated Michigan Rule of Evidence 404(b) by admitting the other acts

evidence is not cognizable on habeas review. *See Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir.

2007). Petitioner has thus failed to state a claim upon which habeas relief may be granted as to

this issue.

Furthermore, even if Petitioner states a cognizable claim in this regard, he is not entitled

to relief. Petitioner has not shown that the disputed evidence rendered his trial fundamentally

unfair. As explained by the Michigan Court of Appeals in reviewing this issue under state law,

testimony about Petitioner's prior criminal sexual conduct conviction was relevant to establish

his identity as the perpetrator due to the similarity of the crimes. *See Berry*, 2005 WL 354583 at

*3-4. Such testimony was properly admitted under state law for those purposes and the

prosecution did not make an improper character or propensity argument based on the evidence.

---

[2]While the Supreme Court has addressed whether prior acts testimony is permissible
under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997);
*Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in
constitutional terms.

Petitioner has not shown that the admission of this evidence was erroneous or, more importantly,

that it rendered his trial fundamentally unfair. Habeas relief is not warranted on this claim.

      C.    <u>Right to Present a Defense Claim</u>

      Petitioner asserts that he is entitled to habeas relief because the trial court denied him a

fair opportunity to present a witness in support of his defense. The Michigan Court of Appeals

described the situation as follows:

> Defendant offered the testimony of Jason Bible to support his theory that Larry
> Miller was responsible for the crimes. In a separate record outside the presence of
> the jury, Bible indicated that he met Miller at a lake campsite in the summer of
> 2001. Bible camped at that location from May 2001 until September or October
> 2001. He noted that the location was about a twenty-five-minute walk from the
> victim's house. Bible indicated that Miller arrived at the campsite on April 7, and
> left September 11. At the time, Miller was living in a brown pickup truck.FN7
> One morning, Miller asked Bible if he heard about a breaking and entering and a
> lady being robbed of about $12. Bible had not heard about the incident, but he
> subsequently read about it in the paper a few days later. Bible described Miller as
> six-feet, two inches tall, and 190 to 195 pounds, with a proportional head. He
> further indicated that Miller drank, went shoeless most of the time, and was from
> Atlanta, Michigan. After Bible saw defendant in the Montmorency County Jail in
> May 2002, he informed the police about Miller's remarks.
>
> FN7. According to defense counsel, at some point the victim said that the
> perpetrator drove a brown pickup truck. However, the parties acknowledged that
> there was no testimony in that regard.
>
> In response to the trial court's inquiry regarding relevance, defense counsel
> claimed that the testimony showed that there was another person in the area who
> shared defendant's description. In excluding the evidence, the trial court
> concluded:
>
> It's speculative and what it proves, what it proves to me is that there are [sic] more
> than one person six foot two within this area and more than one person who might
> have driven a brown truck, we don't even know if he did drive one, but more than
> one person who might have driven a brown truck. Too highly speculative to admit

to the jury as evidence.

*Berry*, 2005 WL 354583 at *4-5.  Respondent contends that this claim lacks merit.

The right of an accused to present a defense has long been recognized as "a fundamental element of due process."  *Washington v. State*, 388 U.S. 14, 19 (1967); *see also United States v. Scheffer*, 523 U.S. 303, 308 (1998); *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986).  However, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions."  *Scheffer*, 523 U.S. at 308.  As explained by the Supreme Court, "well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury.... [T]he Constitution permits judges "to exclude evidence that is 'repetitive ... only marginally relevant' or poses an undue risk of 'harassment, prejudice, [or] confusion of the issues.'"  *Holmes v. South Carolina*, 547 U.S. 319, 326-27 (2006) (citations omitted).

Excluded evidence violates the right to present a defense only if the exclusion is arbitrary or disproportionate to the purpose it was designed to serve or infringes on a weighty interest of the accused. *Scheffer*, 523 U.S. at 308.  "A defendant's interest in presenting...evidence may thus bow to accommodate other legitimate interests in the criminal trial process."  *Id.* (internal quotations omitted).  In determining whether the exclusion of evidence infringes upon a defendant's rights, the question is not whether the excluded evidence would have caused the jury to reach a different result.  Rather, the question is whether the defendant was afforded "a meaningful opportunity to present a complete defense."  *Crane*, 476 U.S. at 690 (quoting

*California v. Trombetta*, 467 U.S. 479, 485 (1984)); *see also Chambers v. Mississippi*, 410 U.S. 284, 302 (1973).

The Michigan Court of Appeals denied relief on this claim, finding that the proposed testimony "constituted mere conjecture, was tenuous, and lacked substantive facts linking Miller to the crimes" and that Jason Bible "admitted as much" on cross-examination during the offer of proof. The court concluded that Bible's proposed testimony "did not constitute competent evidence that someone other than defendant was responsible for the charged offenses" and that the trial court did not abuse its discretion in excluding it. *Berry*, 2005 WL 354583 at *5.

This decision is neither contrary to Supreme Court precedent nor an unreasonable application of federal law or the facts. It is well-established that a criminal defendant has a right to present evidence which tends to prove that another person committed the charged offense. *See Holmes*, 547 U.S. at 327; *Miller v. Brunsman*, _ F.3d _, 2010 WL 1050270, *9 (6th Cir. March 24, 2010); *accord Wade v. Mantello*, 333 F.3d 51, 58 (2nd Cir. 2003); *People v. Ignacio*, 10 F.3d 608, 615 (9th Cir. 1993). While evidence of third-party guilt is generally relevant and material, there must be evidence of a connection between the other suspect and the crime, "not mere speculation on the part of the defendant." *DiBenedetto v. Hall*, 272 F.3d 1, 8 (1st Cir. 2001); *see also Holmes*, 547 U.S. at 327 (quoting 40A Am Jur. 2d Homicide § 286 (1999)); *Andrews v. Stegall*, 11 F. App'x 394, 395 (6th Cir. 2001) (denying habeas relief on similar claim where there was nothing to connect the other person to the crime); *McDowell v. Curtin*, No. 06-CV-14079, 2009 WL 1099252, *4-5 (E.D. Mich. April 23, 2009) (denying habeas relief on

similar claim where "there was no evidence of third-party guilt other than vague speculation").

In this case, Bible's proposed testimony about Miller's statements to him constituted hearsay and was likely inadmissible under state law. Mich. R. Evid. 801. More importantly, Bible's testimony as a whole was speculative as to any real connection between Miller and the crime. Bible's testimony merely indicated that Miller fit the perpetrator's general description (as did Petitioner), drank, walked barefoot often, was camping in the vicinity near the time of the crime, and was aware of the crime before it was published in the newspaper. Such facts do not establish Miller's motive or opportunity to commit the crime, nor do they establish any other significant link to the crime. Moreover, Bible was unclear about when Miller was camping in the area and at one point stated that Miller left the area on September 11, 2001 – before the crime occurred on September 19, 2001. Bible's testimony was also not particularly credible given that he only came forward with his story after seeing Petitioner in jail. Given such circumstances, Petitioner has failed to establish that the trial court's ruling violated his right to present a defense or otherwise rendered his trial fundamentally unfair.

Furthermore, even if the trial court violated Petitioner's constitutional rights in some fashion, he is not entitled to relief. For purposes of federal habeas review, a constitutional error that implicates trial procedures is considered harmless if it did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see also Fry v. Pliler*, 551 U.S. 112, 117-18 (2007) (confirming that *Brecht* standard applies in "virtually all" habeas cases); *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995)

(habeas court should grant petition if it has "grave doubt" about whether trial error had substantial and injurious effect or influence upon the jury's verdict); *Ruelas v. Wolfenbarger*, 580 F.3d 403 (6th Cir. 2009) (ruling that *Brecht* is "always the test" in this circuit).

Here, it is highly unlikely that the trial court's refusal to allow Bible's testimony had a substantial and injurious effect on the jury's determination of guilt. Bible's testimony was merely that Miller was comparable to Petitioner in appearance, that he drank, that he lived in the vicinity near the time of the crime, and that he spoke about the incident before it was in the newspaper. In contrast, the prosecution presented evidence that Petitioner fit the physical description of the assailant, that he inquired about the victim's living situation, that he lived in a cabin next to the victim at the time of the crime, that footprints led from the victim's house to that cabin, that a paper towel and dollar bill were found together in his garbage, and that he had rubber gloves in his possession which contained hair fibers from the victim. Given such evidence, any error in refusing to admit Bible's testimony was harmless beyond a reasonable doubt. Habeas relief is not warranted on this claim.

D.      Jury Questions Claim

Petitioner next asserts that he is entitled to habeas relief because the trial court improperly allowed the jurors to submit questions for witnesses to be asked by the court during the trial. Respondent contends that this claim is barred by procedural default and does not warrant relief from this Court.

14

Federal habeas relief may be precluded on claims that a petitioner has not presented to

the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433

U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to

comply with a state procedural rule, the rule is actually relied upon by the state courts, and the

procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir.

2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,*

244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal

claim on either direct or habeas review unless the last state court rendering a judgment in the

case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v.*

*Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to

make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state

judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied

upon the last reasoned opinion. *Id*.

The Michigan Court of Appeals rendered the last reasoned opinion. In dismissing this

claim, the court relied upon a state procedural bar – Petitioner's failure to object at trial. *See*

*Berry*, 2005 WL 354583 at \*6. The failure to make a contemporaneous request or objection is a

recognized and firmly-established independent and adequate state law ground for refusing to

review trial errors. *See People v. Carines*, 460 Mich. 750, 763, 597 N.W.2d 130 (1999); *People*

*v. Stanaway*, 446 Mich. 643, 687, 521 N.W.2d 557 (1994); *see also Coleman v. Thompson*, 501

U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking

beyond the default to determine if there are circumstances warranting review on the merits. *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989). Plain error review does not constitute a waiver of state procedural default rules. *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative. *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991). The Michigan Court of Appeals denied this claim based upon Petitioner's failure to object at trial.

A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). Petitioner neither alleges nor establishes cause to excuse this procedural default. A federal habeas court need not address the issue of prejudice when a petitioner fails to establish cause to excuse a procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*, 722 F.2d 286, 289 (6th Cir. 1983).

Nonetheless, the Court notes that he cannot establish prejudice as this claim lacks merit. "The Sixth and Fourteenth Amendments guarantee a criminal defendant an impartial jury in state court." *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008) (citing *Ristaino v. Ross*, 424 U.S. 589, 595 n. 6 (1976); *Irvin v. Dowd*, 366 U.S. 717, 722 (1961)). Jurors, however, are presumed to be impartial, *United States v. Guzman*, 450 F.3d 627, 629 (6th Cir. 2006) (citing *Irvin*, 366

U.S. at 723), and "due process does not require a new trial every time a juror has been placed in

a potentially compromising situation .... Due process means a jury capable and willing to decide

the case solely on the evidence before it...." *Smith v. Phillips*, 455 U.S. 209, 217 (1982). The

petitioner bears the burden of proving that the jury was biased. *See United States v. Wheaton*,

517 F.3d 350. 362 (6th Cir. 2008).

The United States Supreme Court has not specifically ruled on the propriety of jurors

submitting questions for witnesses. The United States Court of Appeals for the Sixth Circuit,

while not favoring the practice, has held that "allowing jurors to ask questions during criminal

trials is permissible and best left to the discretion of the trial judge." *United States v. Collins*,

226 F.3d 457, 461 (6th Cir. 2000). The Sixth Circuit has indicated that certain precautions

should be taken such as notifying the jurors and parties about the practice, requiring the jurors to

submit their questions in writing, and instructing the jurors that some questions may not be asked

or could be rephrased as required by evidentiary rules. *Id*. at 464. The Michigan courts have

sanctioned a similar practice. *See People v. Heard*, 388 Mich. 182, 187, 200 N.W.2d 73 (1972).

The trial court appears to have followed the state procedure and taken appropriate cautionary

steps. Petitioner has not shown that he was prejudiced by the jury's questions, that the jury was

biased against him, or that his due process rights were violated. This claim lacks merit. *See,

e.g., Baugh v. Quigley*, No. 05-CV-71676, 2007 WL 2413089, *4-6 (E.D. Mich. Aug. 21, 2007)

(finding same habeas claim to be procedurally defaulted and meritless); *accord Banks v. Davis*,

No. 2:06-CV-280, 2009 WL 1874093, *4-5 (W.D. Mich. June 26, 2009) (same). Petitioner has

thus failed to establish cause and prejudice to excuse this procedural default.

Petitioner has also not established that a fundamental miscarriage of justice has occurred. The miscarriage of justice exception requires a showing that a constitutional violation probably resulted in the conviction of one who is actually innocent. *See Schlup v. Delo,* 513 U.S. 298, 326-27 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). "To be credible, [a claim of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324. Petitioner has made no such showing. This claim is thus barred by procedural default, lacks merit, and does not warrant habeas relief.

E.    DNA Testing Claim

Petitioner also asserts that he is entitled to habeas relief because the state courts should have ordered that DNA testing be done on a foreign hair found in the victim's bed. Respondent contends that this claim is barred by procedural default and lacks merit.

As noted, the failure to make a contemporaneous objection is a recognized and firmly-established independent and adequate state law ground for refusing to review trial errors. The Michigan Court of Appeals dismissed this claim based upon procedural default – Petitioner's failure to request DNA testing at the time of trial. *See Berry*, 2005 WL 354583 at *6-7. Petitioner has neither alleged nor established cause to excuse his procedural default. This Court

18

therefore need not address the issue of prejudice. *See* discussion *supra*.

Again, however, Petitioner cannot demonstrate actual prejudice as this claim lacks merit. The United States Supreme Court has specifically held that a state prisoner has no freestanding federal substantive due process right of post-conviction access to evidence for DNA testing. *See District Attorney's Office for Third Judicial Dist. v. Osborne*, _ U.S. _, 129 S. Ct. 2308, 2319-23 (2009). Additionally, while Michigan provides for post-conviction DNA testing under certain circumstances, *see* Mich. Comp. Laws § 770.16, Petitioner has not shown that he is entitled to such testing. The Michigan Court of Appeals denied his motion for remand to have the unidentified hair compared to the state police DNA database. *See Berry*, 2005 WL 354583 at *6 n. 9. Petitioner does not allege that the state procedure is unconstitutional – and any such claim would likely fail. *See In re Frederick Smith*, No. 07-1220, 2009 WL 3049202, *2 (6th Cir. Sept. 24, 2009) (unpublished) (finding such a claim "untenable because Michigan's statutory scheme is more comprehensive that the state procedures sanctioned by the *Osborne* court").

More importantly, as noted by the Michigan Court of Appeals, the jury was well aware that an unidentified hair was found on the victim's bedding and that it did not belong to Petitioner or the victim. The DNA expert testified to those facts and defense counsel highlighted the same. Petitioner has not shown that identifying the source of the hair, even if possible, would provide further exculpatory value. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759,

771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify

federal habeas relief); *see also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (bald

assertions and conclusory allegations do not provide sufficient basis to hold an evidentiary

hearing in habeas proceedings). Petitioner has also not shown that identifying the source of the

hair would exclude him as the perpetrator of the crime. To be sure, the record indicates that

Petitioner first entered the home with an accomplice, and there is other evidence linking

Petitioner to the crime.

Additionally, Petitioner cannot prevail on any claim that he is entitled to habeas relief

because the prosecutor failed to take additional steps to identify the unidentified hair. As noted

by the Michigan Court of Appeals, the prosecution was not required to conduct further testing or

comparison of the unidentified hair as a matter of due process. A state prosecutor has no

obligation to investigate or discover exculpatory evidence or conduct additional scientific testing

which might lead to exculpatory evidence. *See Arizona v. Youngblood*, 488 U.S. 51, 59 (1988).

This claim lacks merit. Petitioner has also not shown that a miscarriage of justice has occurred.

*See* discussion *supra*. This claim is thus barred by procedural default, lacks merit, and does not

warrant habeas relief.

F.  Procedural Default of Remaining Claims

Respondent contends that several of Petitioner's habeas claims, *i.e.*, those he first

presented to the state courts in his motion for relief from judgment, are barred by procedural

default because he failed to present them on direct appeal despite the opportunity to do so, and

the Michigan Supreme Court courts denied relief pursuant to Michigan Court Rule 6.508(D).

As noted, federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright*, 433 U.S. at 85-87. A petitioner's procedural default in the state courts will preclude federal habeas review if the last state court rendering a judgment in the case clearly and expressly rested its judgment on the procedural default. *Id*. at 85; *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001); *see also Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991). If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion. *Id*.

However, a state prisoner who fails to comply with a state's procedural rules may still have his claims heard on federal habeas review if he can establish cause for noncompliance and actual prejudice resulting from the alleged constitutional violation, or a showing of a fundamental miscarriage of justice. *See Coleman*, 501 U.S. at 753; *Gravley*, 87 F.3d at 784-85.

Furthermore, procedural default is not a jurisdictional bar to reviewing a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 894 (1997). Federal courts are "not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural bar issue involved

complicated issues of state law." *Lambrix*, 520 U.S. at 525. Additionally, when a habeas

petitioner alleges that appellate counsel was ineffective for failing to raise an issue on direct

appeal, which could constitute cause to excuse a procedural default, *see Edwards v. Carpenter*,

529 U.S. 446, 451 (2000), the cause and prejudice inquiry merges with an analysis of the merits

of the defaulted claims and it may be more efficient to consider the merits of the claims. *See*

*Cameron v. Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004) (citing *Strickler v. Greene*, 527

U.S. 263, 282 (1999)). Such is the case here. Accordingly, the Court shall proceed to the merits

of Petitioner's remaining claims.

G.     Sufficiency of the Evidence Claim

Petitioner next asserts that he is entitled to habeas relief because the prosecution failed to

present sufficient evidence to support his convictions. Essentially, he claims that the prosecution

failed to establish his identity as the perpetrator. In *Jackson v. Virginia*, 443 U.S. 307 (1979),

the Supreme Court established that a federal court's review of a sufficiency of the evidence

claim must focus on whether "after viewing the evidence in the light most favorable to the

prosecution, any rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt." *Id*. at 319. The court must view this standard through the

framework of 28 U.S.C. § 2254(d). *See Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

Further, the *Jackson* standard must be applied "with explicit reference to the substantive

elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n. 16. "The

mere existence of sufficient evidence to convict therefore defeats a petitioner's claim."

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003) (citation omitted).

Michigan's first-degree criminal sexual conduct statute provides in relevant part:

(1) A person is guilty of criminal sexual conduct in the first degree if he or she engages in sexual penetration with another person and if any of the following circumstances exists:

(c) Sexual penetration occurs under circumstances involving the commission of any other felony.

* * *

(f) The actor causes personal injury to the victim and force or coercion is used to accomplish sexual penetration.

Mich. Comp. Laws § 750.520b(1); *see also People v. Wilkens*, 267 Mich. App. 728, 737, 705

N.W.2d 728, 736 (2005); *People v. Asevedo*, 217 Mich. App. 393, 395, 551 N.W.2d 478, 480

(1996).

Michigan's first-degree home invasion statute provides:

A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:

(a) The person is armed with a dangerous weapon.
(b) Another person is lawfully present in the dwelling.

Mich. Comp. Laws § 750.110a(2); *see also People v. Sands*, 261 Mich. App. 158, 162, 680

N.W.2d 500 (2004). Circumstantial evidence and reasonable inferences arising from the

evidence may constitute satisfactory proof of the elements of an offense. *See People v. Jolly*,

442 Mich. 458, 466, 502 N.W.2d 177 (1993).

The record reveals that the prosecution presented sufficient evidence to support

Petitioner's convictions. The elderly victim's testimony indicated that two men entered her

home without her permission, threatened her, and stole fifteen dollar bills from her purse. One

of the men returned with a flashlight and forcibly entered her home. He made her use paper

towels to remove fingerprints from some of the money. He also removed her pajama bottoms,

exposed his penis and forced her to touch it (although it never became erect), and then touched

her vagina with his tongue. The perpetrator wore a rubber cap and gloves during the incident,

was broad and barefoot, and smelled of liquor. Witnesses testified that Petitioner was a heavy

drinker and had inquired about the victim's age and her living arrangements. The police

observed bare footprints leading from the victim's home toward the nearby cabin where

Petitioner was staying at the time of the crime. The police recovered liquor bottles, a dollar bill

and paper towels wadded up in a trash container, gloves with rubber tips, and a flashlight from

the cabin. The rubber gloves contained two hairs which were a DNA match to the victim.

Police and witness testimony also showed that Petitioner left Michigan and used a false identity

following the incident. Moreover, the crime was similar to Petitioner's prior sexual assault upon

another elderly woman, an offense to which he pled guilty in 1978, which was admitted as a

signature crime to establish Petitioner's identity as the perpetrator. Such evidence was sufficient

for a reasonable jury to conclude beyond a reasonable doubt that Petitioner committed the charged offenses.

Petitioner's insufficient evidence claim challenges the credibility and weight to be accorded the testimony and evidence presented at trial. However, it is well-settled that "a federal habeas court faced with a record of historical facts that supports conflicting inferences must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326. It is the job of the fact-finder, not a federal habeas court, to resolve credibility conflicts. *See Tucker*, 541 F.3d at 661; *Martin*, 280 F.3d at 618; *Walker v. Engle*, 703 F.2d 959, 969-70 (6th Cir. 1983). The prosecution presented sufficient evidence that Petitioner committed the charged crimes of first-degree criminal sexual conduct and first-degree home invasion. Habeas relief is not warranted.

    H.    <u>Jury Instruction Claim</u>

Petitioner asserts that he is entitled to habeas relief because the trial court erred in instructing the jury on evidence of flight. In order for habeas relief to be warranted on the basis of incorrect jury instructions, a petitioner must show more than the instructions are undesirable, erroneous or universally condemned. Rather, taken as a whole, they must be so infirm that they rendered the entire trial fundamentally unfair. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). If an instruction is ambiguous and not necessarily erroneous, it violates the Constitution only if there is a reasonable likelihood that the

jury has applied the instruction improperly. *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir.

1999). A jury instruction is not to be judged in artificial isolation, but must be considered in the

context of the instructions as a whole and the trial court record. *See Grant v. Rivers*, 920 F.

Supp. 769, 784 (E.D. Mich. 1996). State law instructional errors rarely form the basis for federal

habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

Petitioner has not shown that the trial court erred in instructing the jury. The evidence of

flight was relevant and admissible under Michigan law. *See People v. Goodin*, 257 Mich. App.

425, 432, 668 N.W.2d 392 (2003); *People v. Coleman*, 210 Mich. App. 1, 4, 532 N.W.2d 885

(1995). Although the Supreme Court has expressed skepticism as to the probative value of

evidence of flight, *see Wong Sun v. United States*, 371 U.S. 471, 483 n. 10 (1963), it has

recognized that such evidence may be relevant to show consciousness of guilt. *See United States

v. Scheffer*, 523 U.S. 303, 331 (1998) (dissenting opinion of Stevens, J.). Federal appellate

courts have also held that evidence of flight is admissible to show consciousness of guilt. *See

United States v. Dillon*, 870 F.2d 1125, 1126 (6th Cir. 1989); *accord United States v. Glenn*, 312

F.3d 58, 67 (2d Cir. 2002); *United States v. Lupino*, 301 F.3d 642, 646 (8th Cir. 2002). The

admission of flight evidence is not fundamentally unfair. *See, e.g., Wright v. Jamrog*, No. 04-

CV-71585-DT, 2005 WL 3262544, *7 (E.D. Mich. 2005) (admission of flight evidence was

proper under Michigan law and did not justify habeas relief); *Dorchy v. Jones*, 320 F. Supp. 2d

564, 580 (E.D. Mich. 2004), *aff'd* 398 F.3d 783 (6th Cir. 2005).

In this case, the trial court properly instructed the jury about the evidence of flight under state law. Defense counsel was free to argue that Petitioner had legitimate reasons for his actions and/or that they did not show consciousness of guilt. Petitioner has failed to demonstrate that the trial court's flight instruction was improper or denied him a fundamentally fair trial. Habeas relief is not warranted on this claim.

I.    Illegal Arrest Claim

Petitioner also asserts that he is entitled to habeas relief because the police lacked probable cause to arrest him without a warrant. Federal courts will not address a Fourth Amendment claim upon habeas review if the petitioner had a full and fair opportunity to litigate the claim in state court and the presentation of the claim was not thwarted by any failure of the state's corrective processes. *Stone v. Powell*, 428 U.S. 465, 494-95 (1976). A court must perform two distinct inquiries when determining whether a petitioner may raise a claim of illegal arrest in a habeas action. First, the "court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim. Second, the court must determine whether presentation of the claim was in fact frustrated because of a failure of that mechanism." *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522 (6th Cir. 1982)).

"Michigan has a procedural mechanism which presents an adequate opportunity for a criminal defendant to raise a Fourth Amendment claim." *Robinson v. Jackson*, 366 F. Supp. 2d 524, 527 (E.D. Mich. 2005). This procedural mechanism is a motion to suppress, ordinarily filed

before trial. *See People v. Ferguson*, 135 N.W.2d 357, 358-59 (Mich. 1965) (describing the availability of a pre-trial motion to suppress); *see also People v. Harris*, 291 N.W.2d 97, 99 (Mich. App. 1980) (analyzing the legality of a warrantless search, seizure, and arrest even though raised for the first time on appeal). Consequently, Petitioner is entitled to relief on this issue only if he establishes that he was prevented from litigating the Fourth Amendment issue by a failure of Michigan's procedural mechanism. Petitioner has not done so. The record reveals that Petitioner raised the illegal arrest issue in his motion for relief from judgment and related appeals. The trial court reviewed the Fourth Amendment issue and concluded that Petitioner was not entitled to relief. The Michigan Court of Appeals indicated that the claim lacked merit in denying leave to appeal, and the Michigan Supreme Court denied leave to appeal.

Given this record, it is clear that the Michigan courts were cognizant of Petitioner's Fourth Amendment issue and that he received all the process he was due. While Petitioner challenges the state courts' decisions and claims that he should have been given an evidentiary hearing, he has not shown that the procedures were flawed such that he was unable to properly litigate the issues. Petitioner had a full and fair opportunity to do so. Accordingly, his illegal arrest claim is not cognizable on federal habeas review pursuant to *Stone v. Powell*. Habeas relief is not warranted on this claim.

J.    Denial of Counsel Claim

Petitioner next asserts that he is entitled to habeas relief because he was denied counsel at critical stages of his criminal proceedings. Petitioner essentially claims that the trial court's

28

rulings during the pre-trial period and trial precluded defense counsel from properly representing him.

The United States Supreme Court has held that a constitutional violation warranting a new trial (or other appropriate relief) occurs when a criminal defendant is denied counsel at a critical stage of the proceedings. A presumption of prejudice arises in such cases when: (1) a criminal defendant is completely denied counsel or denied counsel at a critical stage of the proceedings, (2) counsel fails to subject the prosecution's case to meaningful adversarial testing, or (3) counsel is called upon to render assistance where competent counsel likely cannot do so. *See United States v. Cronic*, 466 U.S. 648, 658-61 (1984); *Ivory v. Jackson*, 509 F.3d 284, 294 (6th Cir. 2007) (identifying *Cronic* situations and noting that *Cronic* covers cases in which prejudice is assumed whereas *Strickland* covers cases in which prejudice must be shown); *see also Bell v. Cone*, 535 U.S. 685 (2002).

Petitioner asserts that he is entitled to relief under the third category as to this claim. However, he has not shown that trial counsel was called upon to render assistance under circumstances in which competent counsel likely could not do so. Such a situation arises when circumstances impede counsel's ability to act as an advocate for the defendant, such as when counsel is unable to privately meet with the client, *see United States v. Morris*, 470 F.3d 596, 601-02 (6th Cir. 2006), or has inadequate time to prepare for trial, *see Cronic*, at 466 U.S. at 659-61(discussing last-minute appointment of counsel), *Hunt v. Mitchell*, 261 F.3d 575, 583 (6th Cir. 2001), or when counsel operates under an actual conflict of interest. *See Smith v. Robbins*,

528 U.S. 259, 287 (2000). Such situations do not arise when counsel merely encounters

unfavorable procedural or evidentiary rulings and must continue on with representation despite

those rulings. The record indicates that counsel was present throughout the proceedings, had

sufficient opportunity to consult with Petitioner and prepare a defense, and was able to serve as

an advocate for his client. Petitioner has not shown that he was denied counsel at a critical stage

of the proceedings. Habeas relief is not warranted on this claim.

        K.        Ineffective Assistance of Trial Counsel Claims

Petitioner also asserts that he is entitled to habeas relief because trial counsel was

ineffective. On direct appeal, Petitioner claimed that trial counsel was ineffective for failing to

procure a DNA analysis of the unidentified hair from the victim's bedding, for failing to

adequately cross-examine Mark Boughner, for failing to offer possible alibi testimony, and for

failing to impeach the two police officers who testified about the footprints. On collateral

review, Petitioner asserted that trial counsel was ineffective for failing to investigate his case,

file motions, and prepare a defense. In particular, he claimed that counsel failed to obtain the

victim's medical records, failed to investigate and file motions to suppress his DNA test results

and statements, failed to investigate alternative lines of defense by mis-advising him about a

polygraph, failed to investigate and present witnesses, accepted the government's version of

certain facts, and failed to investigate and present a defense of police fabrication. Petitioner also

asserts that he is entitled to habeas relief due to the cumulative effect of counsel's alleged errors.

Respondent appears to contend that the issues raised on direct appeal lack merit and that the issues raised on collateral review are barred by procedural default.[3]

In *Strickland v. Washington,* 466 U.S. 668 (1984), the United States Supreme Court set forth a two-pronged test for determining whether a habeas petitioner has received the ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires a showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

With respect to the performance prong, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Id.* at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. The petitioner bears the burden of overcoming the presumption that the challenged actions might be considered sound trial strategy. *Id.* at 689.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is one that is sufficient to

---

[3]Part of Respondent's answer discusses ineffective assistance issues from an unrelated case. The Court will disregard that argument and address the merits of the issues at hand.

undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging any claim

of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of

the adversarial process that the [proceeding] cannot be relied on as having produced a just

result."  *Strickland*, 466 U.S. at 686.

Petitioner first claims that counsel was ineffective for failing to procure a DNA analysis

of the unidentified hair from the victim's bedding.  It is well-established that defense counsel has

a duty to conduct a reasonable investigation into the facts of a defendant's case, or to make a

reasonable determination that such investigation is unnecessary.  *See Wiggins v. Smith*, 539 U.S.

510, 522-23 (2003); *Strickland*, 466 U.S. at 691; *Stewart v Wolfenbarger*, 468 F.3d 338, 356 (6th

Cir. 2007) ; *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005); *O'Hara v. Wiggington*, 24 F.3d

823, 828 (6th Cir. 1994).  "American Bar Association standards . . . also mandate counsel's duty

to investigate all leads relevant to the merits of the case."  *Blackburn v. Foltz*, 828 F.2d 1177,

1183 (6th Cir. 1987); *see also Rompilla v. Beard*, 543 U.S. 374, 387 (2005) (noting that the ABA

standards provide guidance for determining the reasonableness of counsel's conduct).  The duty

to investigate "includes the obligation to investigate all witnesses who may have information

concerning his or her client's guilt or innocence."  *Towns*, 395 F.3d 251 at 258.

That being said, decisions as to what evidence to present and whether to call certain

witnesses are presumed to be a matter of trial strategy, and the failure to call witnesses or present

other evidence constitutes ineffective assistance of counsel only when it deprives a defendant of

a substantial defense.  *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004);

*Hutchison v. Bell*, 303 F.3d 720, 749 (6th Cir. 2002). When making strategic decisions,

counsel's conduct must be reasonable. *See Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); *see also Wiggins*, 539 U.S. at 522-23.

The Michigan Court of Appeals denied relief on this claim finding that Petitioner could

not establish that he was prejudiced because the exculpatory value of the unidentified hair was

presented to the jury and there was substantial evidence linking Petitioner to the crime. *Berry*,

2005 WL 354583 at *7. This decision is neither contrary to Supreme Court precedent nor an

unreasonable application of the law or the facts. The record reveals that trial counsel was aware

of the experts' reports and was aware of the unidentified hair at the time of trial. Rather than

demand further analysis of the hair, which could have benefitted, hampered, or had no effect on

the defense, trial counsel chose to emphasize the existence of the unidentified hair and argue that

it created a reasonable doubt as to Petitioner's guilt. This action was a valid and reasonable.

The fact that counsel's strategy was ultimately unsuccessful does not mean that counsel was

ineffective. *See Moss v. Hofbauer*, 286 F.3d 851, 859 (6th Cir. 2002). The jury was well aware

of the unidentified hair and that another man had participated in the initial break-in. Identifying

the source of the hair would not have exculpated Petitioner, particularly in light of the other

evidence of his guilt. Petitioner has failed to establish that counsel erred and/or that he was

prejudiced by counsel's conduct.

Petitioner next asserts that counsel failed to adequately cross-examine Mark Boughner.

The Michigan Court of Appeals denied relief on this claim finding that Petitioner failed to

support this claim, particularly since he conceded that defense counsel impeached Boughner with a prior armed robbery conviction and with his inconsistent police statement. The court also noted that counsel's cross-examination was a matter of trial strategy which would not be second-guessed in hindsight. *Berry*, 2005 WL 354583 at *7. This decision is neither contrary to *Strickland* nor an unreasonable application thereof. The record reveals that counsel sufficiently cross-examined Mark Boughner and elicited information which impeached his credibility and testimony. Petitioner has not shown that counsel erred or that further questioning would have bolstered his defense. He has thus failed to establish that counsel was ineffective under *Strickland*.

Petitioner also claims that counsel was ineffective for failing to offer possible alibi testimony through Mark Boughner. The Michigan Court of Appeals denied relief on this claim finding that Petitioner had not submitted a witness affidavit in support of this claim nor provided the substance of any testimony which would have aided his defense. The court concluded that Petitioner had failed to demonstrate that he was prejudiced by counsel's conduct. *Berry*, 2005 WL 354583 at *8. This decision is neither contrary to *Strickland* nor an unreasonable application thereof. Petitioner's "alibi" claims are conclusory and unsupported. Conclusory allegations, without evidentiary support, do not provide a basis for habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Prince v. Straub*, 78 F. App'x 440, 442 (6th Cir. 2003); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (conclusory allegations of ineffective assistance of counsel do not justify federal habeas relief); *see also Washington v. Renico*, 455

F.3d 722, 733 (6th Cir. 2006) (bald assertions and conclusory allegations do not provide

sufficient basis to hold an evidentiary hearing in habeas proceedings). Petitioner has failed to

show that counsel erred and/or that he was prejudiced by counsel's conduct in this regard.

Petitioner next asserts that counsel failed to impeach the two police officers who testified

about the footprints because there were conflicts about the direction of the footprints. The

Michigan Court of Appeals denied relief on this claim finding that Petitioner could not establish

that he was prejudiced because the evidence revealed that the footprints led from the victim's

home to the cabin where Petitioner was staying and the police found other incriminating

evidence at that cabin. *Berry*, 2005 WL 354583 at *8. This decision is neither contrary to

*Strickland* nor an unreasonable application thereof. Petitioner has not shown that further

questioning of the police officers would have impeached their testimony in any significant way.

The footprints were documented and, while the officers may have mis-spoke or given different

compass directions, they clearly stated that the footprints led from the victim's home to the cabin

where Petitioner was staying. The police also recovered other evidence linking Petitioner to the

crime, particularly the victim's hair fibers from the rubber gloves found in the cabin. Petitioner

has not shown that counsel erred and/or that he was prejudiced by counsel's conduct as required

under *Strickland*.

Petitioner's remaining claims concern counsel's alleged failure to investigate the case,

file motions, and prepare a defense. Petitioner first asserts that counsel was ineffective for

failing to obtain the victim's medical records. Petitioner, however, cannot establish that counsel

erred or that he was prejudiced by counsel's conduct in this regard. The victim's medical condition at the time of the crime was not an issue in the case. Petitioner's defense was that he did not commit the crime, not that the crime did not occur. Additionally, while the victim testified about the circumstances of the crime, she did not identify the perpetrators. Petitioner was identified through police investigation and physical evidence. Petitioner has failed to establish that the victim's medical records were relevant or essential to his defense. Moreover, the treating physician testified at trial and counsel was able to cross-examine that witness. Petitioner has not shown that counsel was ineffective.

Additionally, to the extent that Petitioner asserts that counsel erred by failing to obtain the victim's medical records for the purpose of determining whether she was truly unavailable to testify at trial, he has not shown that counsel erred. A physician testified that the victim, then 91, had undergone major surgery involving the partial removal of her colon approximately two weeks before trial and was still recuperating in a nursing home at the time of trial. The physician believed that the victim's recovery would take several weeks and that she would not be able to testify until fully recovered. The trial court ruled that the victim was unavailable and allowed her preliminary examination testimony to be admitted at trial. The physician provided sufficient information about the victim's health such that counsel may have reasonably determined that further review of the medical records was unnecessary.

Petitioner has also not shown that he was prejudiced by counsel's conduct. Counsel vigorously sought to adjourn the case until the victim recovered, citing potential new avenues for

inquiry, but was unsuccessful. Petitioner has not shown that the victim's medical records would have yielded a different result. The record also indicates that defense counsel was able to thoroughly question the victim at the time of the preliminary examination. While counsel may have been able to ask the victim additional questions had she appeared for trial, there is no indication that the answers would have been favorable to the defense. Lastly, a reasonable argument can be made that the absence of such a sympathetic victim was beneficial to the defense. Petitioner has failed to establish that counsel was ineffective.

Petitioner next asserts that counsel failed to investigate and file motions to suppress his DNA test and statements. Petitioner cannot prevail on this claim as he has failed to establish that his DNA or his statement (about using an alias while out of state) were improperly obtained. The police had a warrant for the DNA sample, which was supported by probable cause as set forth in the officer's affidavit and determined by the state judge. There is also no indication in the record that Petitioner's statements to police were involuntary, and Petitioner has failed to offer factual support for his claim. As noted, conclusory allegations do not provide a basis for habeas relief. *See, e.g., Cross*, 238 F. App'x at 39-40; *Workman*, 178 F.3d at 771. Petitioner has not shown that his DNA or his statements were obtained in violation of his constitutional rights. Defense counsel cannot be deemed ineffective for failing to make a futile objection or motion. *See McQueen*, 99 F.3d at 1316. Petitioner has failed to establish that counsel erred.

Petitioner also asserts that counsel failed to investigate alternative lines of defense by mis-advising him about his right to a polygraph. As an initial matter, the Court notes that there

is no constitutional right to a polygraph examination. *See United States v. Scheffer*, 523 U.S. 303, 309 (1998); *United States v. Thomas*, 167 F.3d 299, 308, n. 8 (6th Cir. 1999) (stating that the Supreme Court in *Scheffer* "acknowledged that there is no consensus in the scientific community that polygraph evidence is reliable, and that there is no constitutional right to have polygraph evidence admitted at trials"); *Luckett v. Berghuis*, No. 04-CV-73037-DT, 2006 WL 1779383, *2 (E.D. Mich. June 26, 2006) (citing *Scheffer* and ruling that a habeas petitioner had no constitutional right to take a polygraph examination to establish his innocence).

Michigan law provides that a defendant who is charged with first-degree criminal sexual conduct or several other sex offenses shall be given a polygraph examination or lie detector test if he or she requests one. *See* Mich. Comp. Laws § 776.21(5). Even when a defendant passes a polygraph examination, however, the results are inadmissible at trial under Michigan law. *See People v. Phillips*, 469 Mich. 390, 397, 666 N.W.2d 657 (2003); *People v. Jones*, 468 Mich. 345, 354, 662 N.W.2d 376 (2003). While Petitioner had a right to take a polygraph examination under state law, he has not established that counsel erred in failing to request one. Counsel may have been concerned about Petitioner's ability to pass a polygraph examination or may have determined that such action would have been futile given the inadmissibility of the results and the other inculpatory evidence obtained by the police. Even if counsel were mistaken, however, Petitioner has not shown that he was prejudiced by counsel's conduct as he has not submitted a successful polygraph nor established that the same would have benefitted his case. He has thus failed to establish that counsel was ineffective under *Strickland*.

Petitioner also asserts that counsel failed to investigate and present witnesses, namely Jason Bible, Angela Englehart (who would have testified in a manner similar to Bible), and Larry Miller. The record, however, reveals that counsel was aware of these individuals through police reports, issued subpoenas for the witnesses, and proffered the testimony of Jason Bible, but the trial court disallowed the testimony. Petitioner has not shown what more counsel could have done or what additional information he would have discovered that would have helped his case. Petitioner similarly asserts that counsel should have further investigated juror Sandra Haslam's statements during jury voir dire that she heard that someone staying with Larry and Michele Cunningham may have been involved in the crime. Petitioner, however, has not shown that counsel erred or that he was prejudiced by counsel's conduct. Haslam acknowledged that she had just heard a rumor. It is also doubtful that counsel could have acted on her comments given that the trial had begun. More importantly, Petitioner has not shown what additional information counsel should have discovered which would have assisted in his defense. Conclusory allegations are insufficient to justify habeas relief. Petitioner has failed to establish that counsel was ineffective under the *Strickland* standard.

Petitioner also claims that trial counsel erred by accepting the government's version of various facts. The record, however, reveals that counsel challenged the prosecution's case and argued the salient conflicts and deficiencies in the evidence. Petitioner seems to believe that counsel was deficient because he was unable to convince the jury of Petitioner's version of events. Counsel, however, took reasonable steps to discredit the prosecution's case and show

that the evidence was insufficient to establish Petitioner's identity as the perpetrator. The fact that counsel was unsuccessful does not mean that counsel was ineffective.

Petitioner relatedly asserts that trial counsel failed to investigate and present a defense of police fabrication. The record reveals that counsel argued the deficiencies in the case and questioned the police investigation. Petitioner has not shown what more counsel could have done which would have benefitted the defense in any significant way. Petitioner has also not shown that he was prejudiced by counsel's conduct given that he has offered no evidence which indicates that the police, in fact, fabricated evidence or provided false testimony at trial. Petitioner has thus failed to establish that counsel was ineffective.

Lastly, Petitioner asserts that he is entitled to habeas relief due to the cumulative effect of counsel's alleged errors. The Court, however, has not found any individual errors of constitutional significance. Petitioner thus cannot establish that he is entitled to relief based upon cumulative error. Habeas relief is not warranted on these claims.

L.  Ineffective Assistance of Appellate Counsel Claim

Petitioner also asserts an independent claim that appellate counsel was ineffective for failing to raise the issues presented to the state courts on collateral review to the state appellate courts on direct appeal of his convictions. Given the Court's determination that the foregoing claims lack merit, however, Petitioner cannot establish that counsel erred and/or that he was prejudiced by counsel's conduct under the *Strickland* standard. Habeas relief is not warranted on this claim.

M.     Actual Innocence Claim

Lastly, Petitioner contends that he is entitled to habeas relief because he is actually innocent whether or not Petitioner states a claim upon which habeas relief may be granted as to this issue.  "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993).  However, this Court does not have to address the question, because even if such a claim were viable upon habeas review, Petitioner is not entitled to relief on such a basis.  Petitioner has not presented the Court with new, reliable evidence of his actual, factual innocence.  *See Schlup*, 513 U.S. at 324; *Bousley*, 523 U.S. at 624.  His conclusory allegations of innocence and his challenges to perceived deficiencies in the prosecution's case are insufficient to establish his actual innocence.  Habeas relief is not warranted on this claim.

V.     Conclusion

For the reasons stated, the Court concludes that Petitioner is not entitled to federal habeas relief on the claims contained in his petition.  Accordingly, the Court **DENIES WITH PREJUDICE** the petition for a writ of habeas corpus.

Before Petitioner may appeal the Court's dispositive decision, a certificate of appealability ("COA") must issue.  *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b).  A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  When a court rejects a habeas claim on the merits,

the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id*. at 336-37.

When a district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

Having considered the matter, the Court concludes that Petitioner has made a substantial showing of the denial of a constitutional right as to his habeas claims concerning his right to present a defense and the effectiveness of trial counsel regarding counsel's investigation of such

witnesses.  The Court further concludes that Petitioner has failed to make a substantial showing

of the denial of a constitutional right as his remaining habeas claims and that jurists of reason

would not find the Court's procedural rulings debatable.  The Court therefore **GRANTS IN**

**PART** and **DENIES IN PART** a certificate of appealability.

      **IT IS SO ORDERED**.


                        <u>S/Arthur J. Tarnow</u>
                        Arthur J. Tarnow
                        United States District Judge

Dated:  April 12, 2010


I hereby certify that a copy of the foregoing document was served upon parties/counsel of record on April 12, 2010,
by electronic and/or ordinary mail.

                        <u>S/Catherine A. Pickles</u>
                        Judicial Secretary